UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
                                                   :

**UNITED STATES,**                                    :

                                                   **Plaintiff,**         :

                                                                     :              **07 Cr. 1144 (HB)**

                                 - against -                         :

                                                                  :              <u>**OPINION & ORDER**</u>

**SALVADOR COLLADO,**                    :

                                                   **Defendant.**       :

                                                                      :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

      Defendant Salvador Collado was charged with one count of being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). After he pled guilty without a plea agreement, the presentence report calculated the range for sentence at between fifteen to twenty-one months, which properly reflects a total offense level of twelve and a Criminal History Category of III. During the sentencing hearing on May 8, 2008, I instructed Mr. Collado's attorney and the Government to submit additional letters to the Court regarding an appropriate sentence for Mr. Collado. Upon review of these papers, the presentence report and the relevant law, I have determined that an incarcerative sentence would be inappropriate and that the sentence for the reasons set out below will consist of time served and three years' supervised release with certain conditions, 200 hours of community service and a $100 assessment.

## I. FACTUAL BACKGROUND

      Salvador Collado, age 38, was convicted on January 31, 1992 in New York Supreme Court, Bronx County, for Robbery in the First Degree. Southern District of New York Probation Office, Presentence Report 2, ¶ 6 (prepared Mar. 21, 2008, revised May 1, 2008) ("PSR"). During the robbery, he shot and killed his accomplice and shot and injured a store employee. *Id.* ¶ 35. He noted in response to my question that while he agreed to participate in the robbery he had no notion of how to handle a gun and the firing of some twenty-seven bullets was all a terrible accident in which he too was injured. Mr. Collado was twenty-one years old at the time. *Id.* ¶ 34. He served more than twelve years in prison and, in a letter dated February 5, 2008, explained to me that he has now "been out for a little over three years and in those three years I have been around positive people, church going people and working people. . . . I work hard and

appreciate life and all it has to give. . . . I have changed my life." Ex. 1 provided to the Court during May 8, 2008 sentencing hearing ("Collado Letter"). While I receive letters like this with some frequency, the facts here appear to bear out the Defendant's words.

During his prison term, Mr. Collado earned his GED and certificates in various trades. PSR ¶¶ 57-58. He was provided an opportunity to enter the RSAT intensive six-month residential substance abuse program, and he completed the program in February 2003. Def.'s Br. 2. After graduation, he was asked to serve as a counselor to other inmates participating in substance abuse treatment. *Id.* When he was released from prison on parole in November 2004, he continued his substance abuse treatment at an outpatient program in the Bronx. *Id.* He graduated from the outpatient treatment program at Hunts Point Multi-Service Center, Inc. Outpatient Chemical Dependency Parole Program on May 3, 2006. His certificate of successful completion dated May 3, 2006 attests that he "made lifestyle changes to support his sobriety" and "he showed determination in turning his life around." Def.'s Br. Ex. L. In a letter dated March 18, 2008, two years after his graduation, his former counselors at Hunts Point wrote a letter of reference for Mr. Collado. They indicated that "Mr. Collado has proven to be a model client . . . able to address many issues that were an impediment to his integration to society. He has proven that with motivation and desire much can be accomplished." Def's. Br. Ex. M. Several of Mr. Collado's friends also wrote letters to the Court attesting to Mr. Collado's good character since his release. *See* Def.'s Br. Exs. O-R, W, X.

Since his release, Mr. Collado has been steadily employed. PSR ¶ 48. He first worked as a stockperson, then took a higher paying job in construction. *Id.* ¶¶ 60-61. In the summer of 2005, he began working as a delivery driver, earning $17 per hour. *Id.* ¶ 62. In 2007, with the assistance of his girlfriend, Lydia Molina, he was able to purchase his first truck and start his own moving company, "Sal Trucking Service." *Id.* ¶ 63. His business has grown, and he has one employee. *Id.* He currently holds a Class B Commercial Driver's License and, at the time of his current offense, was preparing to take the examination for a Class A Commercial Driver's License, which will allow him to drive larger trucks. *Id.* ¶ 59.

## II. OFFENSE

On October 25, 2007, two agents of the Diplomatic Security Service of the Department of State visited Mr. Collado's apartment and met with Ms. Molina, who after contact with the Defendant and pursuant to his instructions found and opened Mr. Collado's lockbox to retrieve several documents relating to Mr. Collado's passport application. *Id.* ¶¶ 6-7. When she opened

the lockbox in the presence of the agents, the agents saw an unopened box that contained fifty rounds of nine-millimeter ammunition. *Id.* ¶¶ 7, 12.

Mr. Collado explained that, about one month earlier, he had found the ammunition in the back of a van that he had recently purchased. *Id.* ¶ 8. The van's former owner, Victoria Padron, an Environmental Protection Specialist, wrote to me that she had bought the van in 2005 from a man named David, last name unknown, for use during her short commute between her home and the train. Def.'s Br. Ex. R. In July or August of 2007, her son was driving the van to deliver newspapers and got into an accident near Mr. Collado's and Ms. Molina's home. *Id.* Ms. Padrona ultimately found the cost of repairing the van to be too expensive and, a few weeks later, was planning to donate it to charity, when Mr. Collado offered to purchase it and fix it himself for use in his business. *Id.* Mr. Collado purchased the van for $300. PSR ¶ 12.

While Mr. Collado and Daniel Casiano, who works with Mr. Collado, were removing the seats and stripping the van's interior, they discovered the box of ammunition.[1] *Id.* Mr. Casiano wrote a letter to the Court that echoes the Collado version, adding that Mr. Collado took the bullets and put the box in a safe place until work was finished on the minivan. Def.'s Br. Ex. T. Mr. Collado explained that he put the ammunition in his lockbox while he tried to decide what to do. PSR ¶ 12. Mr. Collado said he was aware that it was illegal for him to possess the ammunition but that he did not know what to do with it. *Id.* He was reluctant to hand it over to any authority because he feared that his possession would be suspect. *Id.* Mr. Collado's statement that he does not own a firearm is undisputed. *Id.* ¶ 8.

The Probation Office has calculated a sentence range pursuant to the United States Sentencing Guidelines (the "Guidelines"), with which I agree, of fifteen to twenty-one months, based on a total offense level of twelve and a Criminal History Category of III.[2] *Id.* ¶ 4. The Probation Office's Presentence Investigation report states that Mr. Collado has been released on bond since shortly after his arrest in October 2007, and has been compliant with the conditions of his release from the beginning and has appeared at all official appointments. *Id.* ¶ 5. It is interesting to note that Mr. Collado's state parole officer allowed his parole term to expire in late February 2008, notwithstanding Mr. Collado's current offense. *Id.* ¶ 34.

---

[1] The van's former owner said that neither she nor her son knew about the ammunition. Def.'s Br. Ex. R.
[2] The total offense level of twelve reflects a two-point reduction for acceptance of responsibility. PSR ¶ 19.

3

### III. DISCUSSION

A trilogy of Supreme Court cases over the past several years has made it "pellucidly" clear that while judges must pay homage to the Guidelines, the Guidelines are only advisory. *Gall v. United States*, 128 S. Ct. 586, 594 (2007). *See also Kimbrough v. United States*, 128 S. Ct. 558 (2007); *United States v. Booker*, 543 U.S. 220 (2005). In *Gall*, the Supreme Court provided considerable guidance to the post-*Booker* sentencing court. In the district court, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" in deciding what sentence to impose. 128 S. Ct. at 596. However, a district judge "may *not* presume that the Guidelines range is reasonable," but must "make an individualized assessment on the facts presented." *Id.* at 596-97 (emphasis added).

Quoting from the Supreme Court's earlier opinion in *Koon v. United States*, 518 U.S. 81, 113 (1996), Justice Stevens in *Gall* wrote that "in the federal judicial tradition[,] . . . the sentencing judge [is] to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." 128 S. Ct. at 598. As articulated by the district court in *United States v. Coughlin*, No. 06 Cr. 20005, 2008 WL 313099, *7 (W.D. Ark. Feb. 1, 2008), on remand after the Supreme Court's decision in *Gall*:

> [B]ased on the unique facts of a particular case, austere adherence to the averages and generalities of the Guidelines can be unjust and contrary to reason. . . . No chart of numbers will ever fully contemplate, quantify and cipher the endless variations of the human experience. While it might provide a normalizing force in sentencing, we cannot, with a system of points and categories, reduce justice to a universal formula.

**A.     18 U.S.C. § 3553(a) Factors**

In making such an individual assessment, the district court must contemplate, in addition to the Guidelines, the factors laid out in 18 U.S.C. § 3553(a). *Gall*, 128 S. Ct. at 596. The "overarching" command of § 3553(a) is the Parsimony Clause, which "instruct[s] district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough*, 128 S. Ct. at 563 (quoting *Gall*, 128 S. Ct. at 600). The goals of sentencing as set forth in § 3553(a)(2) are:

(A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)    to afford adequate deterrence to criminal conduct;

(C)    to protect the public from further crimes of the defendant; and

4

   (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In applying these sentencing goals to the offense at hand, the Court must consider (1) the nature and circumstances of the offense and the offender's history and characteristics, (2) the sentences available, (3) the sentencing range established in the Sentencing Guidelines, (4) policy statements issued by the Sentencing Commission, (5) the need to avoid unwarranted sentence disparities among similarly situated defendants, and (6) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a)(1), (a)(3)-(7).

Here, after considering both the Guidelines and Mr. Collado's individual circumstances, I conclude that any term of imprisonment not only would be "greater than necessary" to accomplish the goals of sentencing, but also could undermine those goals by halting, or possibly reversing, Mr. Collado's significant progress as a contributing member of his community.  Here, while Mr. Collado's offense, possessing ammunition as a felon, was certainly serious, there is no evidence that he intended to use the ammunition to serve a violent end, and the Government does not allege that Mr. Collado had any such intent.  While some punishment is appropriate to promote respect for the law, Mr. Collado does not appear to be a danger to the public, and imprisonment is unnecessary to fulfill the purposes enumerated in § 3553(a)(2)(C).  The fact that Mr. Collado's state parole officer permitted his parole term to expire—notwithstanding the current indictment—demonstrates that officer's confidence, at least, that Mr. Collado poses no threat to the community.

Moreover, incarceration is not necessary here to afford adequate deterrence to criminal conduct.  *See* 18 U.S.C. § 3553(a)(2)(B).  Mr. Collado has already spent more than a decade in prison, ample time to deter him from any further criminal conduct.  While he has recognized that "there is no justification for finding something like that [the box of ammunition] and forgetting to give it to the appropriate people right away," *see* Collado Letter, I am convinced that Mr. Collado had no intention of jeopardizing his business and personal relationships, which he has worked so hard to build since his release, by committing another crime.  I am further convinced that, given Mr. Collado's strong social network, evidenced by the many supportive letters, and his demonstrated drive to succeed, a term of imprisonment would be neither necessary nor constructive.  While Mr. Collado's prior youthful offender adjudication and prior convictions include four felonies and one misdemeanor, PSR at 21, they all occurred when he was twenty-one years old or younger some fifteen years or more in the past.

5

Neither would incarceration reflect the seriousness of the offense, promote respect for the law or provide just punishment. *See* 18 U.S.C. § 3553(a)(2)(A). There is no evidence that Mr. Collado intended to engage in any wrongdoing with the ammunition. It is undisputed that he did not own a firearm of any kind. While being a felon in possession of ammunition is a serious offense, given the more than sixteen years between Mr. Collado's felony offense at age twenty-one and his possession of ammunition at age thirty-eight, juxtaposed with his positive reintegration into society, a term of imprisonment would be counterproductive. *See Gall*, 128 S. Ct. at 596 (holding that district court appropriately emphasized Gall's young age at the time of the offense as a mitigating factor; all of Gall's criminal history, including the offense for which he was being sentenced, had occurred at least five years earlier when he was twenty-one years old or younger).

Indeed, incarceration would likely undermine the fourth goal of sentencing, to provide Mr. Collado with needed educational or vocational training, medical care or other correctional treatment in the most effective manner. *See* 18 U.S.C. § 3553(a)(2)(D). As set forth above, Mr. Collado has come a long way since his robbery conviction, developing a mutually nurturing three-year relationship with what appears to be an exemplary citizen and a new business which has prospered and acting as a role model and counselor for youth in his community. For example, Mr. Collado's friend, Alex Feliciano, wrote to me that if Mr. Collado had not spoken with his 17-year-old son about the importance of staying in school and staying away from drugs, his son would not have finished school. Def.'s Br. Ex. W. Silvia Cardona, the sister of Mr. Collado's girlfriend, wrote to me that during the four years that she has known Mr. Collado he has provided "sound and good advice" to her children, ages 11 and 21. Def.'s Br. Ex. X. Any term of imprisonment would needlessly halt, and possibly reverse, the remarkable rehabilitation that Mr. Collado began in prison and has continued since his release over three years ago. *See United States v. Hawkins*, 380 F. Supp. 2d 143, 165 (E.D.N.Y. 2005), *aff'd*, 228 Fed. App'x 107 (2d Cir. 2007) (concluding that any incarceration "will in effect doom her. . . . Rehabilitation should not now be destroyed by wanton and unthinking application of mechanical rules for imprisonment.").

Particularly striking is a two-page letter dated April 24, 2008 from Dennis Suarez, a cousin-in-law of Mr. Collado and a Detective with the Bergen County Prosecutor's Office in Hackensack, New Jersey. Mr. Suarez tells me that since coming to know Mr. Collado after his release from prison, he has concluded that he has "never met a more completely readjusted

6

offender in [his] entire twenty-two (22) year career. Mr. Collado has demonstrated his complete denouncement of his prior delinquencies and has shown through his interaction with me and my family as well as children in his neighborhood how his change has been complete."

Finally, Mr. Collado's completion of post-incarceration outpatient drug treatment and the positive evaluations provided by his counselors, *see* Def.'s Br. Exs. L, M, illustrate one way and perhaps the most successful path to a cure, or as close as we have come to date to a cure. The National Institute on Drug Abuse, National Institutes of Health, U.S. Department of Health and Human Services, *Principles of Drug Abuse Treatment for Criminal Justice Populations* 4 (Sept. 2007). Specifically, the National Institute on Drug Abuse writes that "[c]ontinuity of care is essential for drug abusers re-entering the community," and while "[t]reatment in prison or jail can begin a process of therapeutic change, . . . [c]ontinuing drug treatment in the community is essential to sustaining these gains." Mr. Collado has done just that, and, while one can never be sure with a former addict, he appears cured of his addiction. The community would be better served by having Mr. Collado in it and available to provide substance abuse treatment to others who have recently been released from incarceration, just as he provided substance abuse treatment to other inmates during his imprisonment.

**B.   Sentence of Time Served and Supervised Release**

Supervised release is tantamount to probation, and the courts and the United States Sentencing Commission have recognized that probation is both rehabilitative and punitive:

> Probation is viewed by many as rehabilitative in nature . . . However, probation is also a punitive measure, and 'may be used as an alternative to incarceration, provided that the terms and conditions of probation can be fashioned so as to meet fully the statutory purposes of sentencing, including promoting respect for the law, providing just punishment for the offense, achieving general deterrence, and protecting the public from further crimes by the defendant.'

*U.S. v. Brady*, No. 02 Cr. 1043, 2004 WL 86414, *8-9 (E.D.N.Y. Jan. 20, 2004) (quoting U.S. Sentencing Guidelines Manual ch. 5, pt. B, introductory cmt.).

In *Gall*, the Supreme Court reviewed the Eighth Circuit's vacatur of the probationary sentence imposed by the district court. The Supreme Court held that it was error for the Eighth Circuit to give no weight to the significant burdens inflicted by a term of supervised release or probation. The Court observed that probation, or supervised release, is not an act of leniency, but rather a "substantial restriction of freedom" because probationers may not "leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from their probation officer or the court." 128 S. Ct. at 595-96. Probationers must "report regularly to

7

their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking." *Id.* at 596.

Here, a sentence of time served, three years of supervised release and 200 hours of community service is sufficient, but not greater than necessary, to reflect the seriousness of the offense, provide just punishment, afford adequate deterrence, protect the public and provide Mr. Collado with supervision, while permitting him to continue to nurture his positive relationships and his business. *See U.S. v. Hawkins*, 228 Fed. App'x 107, 108-09 (2d Cir. 2007) (upholding the district court's non-Guidelines probationary sentence under § 3553(a) due to the defendant's positive progress during the year between her indictment and sentence).

### IV. SENTENCE

For the reasons set forth above, Mr. Collado's case falls "outside the 'heartland'" for which the United States Sentencing Commission has provided guidelines, and thus I find, as noted, that any term of imprisonment would be greater than necessary to fulfill the purposes of sentencing under 18 U.S.C. § 3553(a). *See Kimbrough*, 128 S. Ct. at 563. Defendant is hereby sentenced to time served, three years of supervised release and 200 hours of community service. The community service will be focused on counseling at-risk youth and recently released felons with the need for continued drug treatment, all to be arranged and supervised by the Probation Office with notification to the Court as to where and when the community service will take place. In evaluating options for community service, the Probation Office shall consider the letter dated May 14, 2008 and submitted with Defendant's May 15, 2008 brief, from Domingo Fernandez, Jr., Intake Manager of United Bronx Parents, Inc. In that letter Mr. Fernandez indicates that Mr. Collado completed the United Bronx Parents outpatient program as part of his parole mandate during 2006, that he has been "very persistent about straightening out his life," that Mr. Fernandez often refers to his story when speaking with new clients, that United Bronx Parents is "agreeable" to having Mr. Collado render some of his time to their program, as they believe he can provide new clients with motivation and be a positive influence on current clients, and that they can utilize Mr. Collado's assistance during the hours of 9:30 to 11:30 a.m. and 5:00 to 7:00 p.m. Monday through Thursday. This sentence is the most reasonable under all the circumstances. *See United States v. Kon*, No. 04 Cr. 271-03, 2006 WL 3208555, *5-6 (S.D.N.Y. Nov. 2, 2006) (imposing non-Guidelines sentence of three years' supervised release after considering factors in 18 U.S.C. § 3553(a)).

Mr. Collado's total offense level of 12 is also subject to a fine under § 5E1.2 of the Guidelines, in the amount of $3,000 to $30,000. The Guidelines require that "[t]he court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a). The court must consider the expected costs to the Government of any period of probation or supervised release. The Probation Office has recommended that the fine be waived due to Mr. Collado's financial condition. I agree. The Presentence Investigation report shows that Mr. Collado's monthly cash flow, after expenses, is only $215, and a credit report on March 7, 2008 revealed that Mr. Collado has $1,350 of debt that has gone into collection. PSR at 21, 23.

As conditions of Mr. Collado's supervised release, there are mandatory, standard and special conditions, all of which are to be found on the Judgment. The mandatory conditions include (1) not committing another federal, state or local crime; (2) not illegally possessing a controlled substance; (3) not possessing a firearm or destructive device; (4) submitting to one drug testing within fifteen days of placement on supervised release and at least two unscheduled drug tests thereafter, as directed by the probation officer; and (5) cooperating in the collection of DNA as directed by the probation officer;. The special conditions require the Defendant to perform 200 hours of community service as set out above and to provide a letter to the Court on a quarterly basis, beginning July 1, 2008 (*i.e.*, July 1, October 1, January 1, April 1 of each year of supervised release), apprising me of the progress that he has made, and to submit his person, residence, place of business, vehicle or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of supervised release may be found, with the search to be conducted only at a reasonable time and in a reasonable manner. Mr. Collado must also pay the $100 special assessment fee as required by statute, and follow the standard conditions of supervised release.

**IT IS SO ORDERED.**
New York, New York
June 5, 2008

_____
U.S.D.J.